UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VINETTA J. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18 CV 1431 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Vinetta J. Woods brings this action under 42 U.S.C. § 1383 seeking judicial review of the Commissioner's final decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Because the Commissioner's final decision is not supported by substantial evidence on the record as a whole, I will reverse the decision and remand the matter for further proceedings.

## Procedural History

On January 28, 2015, the Social Security Administration denied Woods' October 2014 application for SSI in which she claimed she became disabled on

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as defendant in this action.

November 1, 2011, because of arthritis in both hands and right elbow, migraines, curvature of the spine, pressure on discs, depression, and deterioration of the spine.[2]  Woods later amended her alleged onset date to October 10, 2014.  At Woods' request, a hearing was held before an Administrative Law Judge (ALJ) on March 10, 2017, at which Woods and a vocational expert testified.  On September 1, 2017, the ALJ denied Woods' claim for benefits, finding that she could perform work that existed in significant numbers in the national economy.  On June 27, 2018, the Appeals Council denied Woods' request to review the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Woods claims that the ALJ erred in classifying her as a "younger individual" when determining her ability to perform work.  Woods also claims that the ALJ erred in discounting her subjective complaints.  For the reasons that follow, I will reverse the ALJ's decision and remand this matter to the Commissioner for further proceedings.

**Relevant Background**

Woods' birthdate is January 2, 1968.  In determining Woods' ability to

---

[2] Woods earlier filed an application for benefits, which was denied by an Administrative Law Judge on April 24, 2013.  (Tr. 71-78.)  The Appeals Council denied Woods' request for review (Tr. 82-86), and Woods did not pursue the claim further.  In this action, Woods does not seek judicial review of the Commissioner's adverse decision regarding that application.  Nor does she seek to reopen the application.

perform work, the ALJ classified Woods as a "younger individual," reasoning that Woods was 46 years old when she filed her application in October 2014. When the ALJ rendered her decision in September 2017, however, Woods was 49 years old and was four months away from turning 50. This scenario placed Woods in a "borderline age situation" under the Social Security Regulations, which required the ALJ to consider applying the higher age category of "closely approaching advanced age" for persons aged 50 to 54. Woods argues that the ALJ's failure to consider her borderline age situation rendered the decision of non-disability unsupported by substantial evidence.

With respect to the medical records and other evidence of record, I adopt Woods' recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 12-1) and note that they are admitted *in toto* by the Commissioner. (ECF 17-1.) I also adopt the factual statements set out in the Commissioner's Statement of Additional Material Facts (ECF 17-2), which Woods admits in their entirety. (ECF 19-1.) These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for SSI under the Social Security Act, Woods must prove that

she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant

is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant, with her RFC and other vocational factors, can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

B.  The ALJ's Decision

In her written decision here, the ALJ found that Woods had not engaged in substantial gainful activity since October 10, 2014, the alleged onset date of disability. The ALJ found that Woods' degenerative disc disease of the lumbar spine with L5-S1 facet osteoarthritis, degenerative disc disease of the cervical spine, obesity, and depression/mood disorder due to medical condition were severe impairments but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.)

The ALJ determined that Woods had the RFC to perform sedentary work except that she

> can perform no climbing on ropes, ladders, or scaffolds. The claimant can perform no more than occasional climbing on ramps/stairs, stooping, kneeling, or crouching. The claimant can perform no crawling. The claimant should avoid concentrated exposure to vibration and work hazards such as unprotected heights and being around dangerous moving machinery. The claimant is able to understand, remember, and carry out simple instructions consistent with unskilled work. The claimant can perform only simple decision-

> making related to basic work functions. The claimant must avoid
> work involving intense or extensive interpersonal interaction,
> handling complaints or dissatisfied customers, and close proximity to
> coworkers.

(Tr. 16.)

The ALJ found that Woods had no past relevant work. (Tr. 21.) Considering Woods' vocational factors, and specifically, that Woods was a younger individual given that she was 46 when she applied for benefits, that she had a high school education, and that the transferability of job skills was immaterial, the ALJ determined that the Medical-Vocational Guidelines (Guidelines) would support a finding that Woods was not disabled if she could perform the full range of sedentary work. But because the ALJ found that Woods was impeded by additional limitations as set out in the RFC, the ALJ considered vocational expert testimony in determining whether Woods could perform work as it existed in the national economy. Relying on such testimony, the ALJ concluded that Woods could perform work as a clerical addresser, surveillance system monitor, and assembly worker. (Tr. 22.) The ALJ thus found that Woods was not under a disability since October 10, 2014. (Tr. 23.)

C.  Vocational Factor – Age

At Step 5, the burden shifts to the Commissioner to show that the claimant has the physical RFC to perform a significant number of jobs in the national economy that are consistent with the claimant's impairments and vocational

factors, that is, her age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The Commissioner may refer to the Guidelines to meet this burden. *See Pearsall*, 274 F.3d at 1219.

The Guidelines are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011). The Guidelines take into account only exertional limitations and certain demographic features; they do not account for non-exertional limitations. *McCoy*, 648 F.3d at 613. Where an ALJ's findings of fact regarding a claimant's vocational factors and RFC coincide with all of the criteria of a particular Guideline rule, the rule directs a conclusion as to whether the claimant is or is not disabled, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a); and the ALJ must reach the conclusion directed by the relevant Guideline – either disabled or not disabled. *Phillips*, 671 F.3d at 702.

Here, the ALJ found that Woods was limited to sedentary work, was a younger individual, and had a high school education. With Woods' lack of work experience, Guideline Rule 201.21 directs a finding of not disabled. *See* 20 C.F.R. § 416.965(a) (having no work experience may equate with having no transferrable work skills). However, if the ALJ had classified Woods' age as "closely approaching advanced age," Guideline Rule 201.12 would direct a finding of disabled.

Under the Guidelines, three age categories are specified: a younger person (under age 50), a person closely approaching advanced age (age 50-54), and a person of advanced age (age 55 or older). 20 C.F.R. § 416.963(c)-(e). Although the Commissioner is directed to use each of the age categories that applies to a claimant during the period for which the Commissioner must determine disability, the age categories are not applied mechanically in a "borderline situation." 20 C.F.R. § 416.963(b); *Phillips*, 671 F.3d at 702. Instead, if a claimant is "within a few days to a few months" of reaching an older age category, and applying the older category would result in a determination that the claimant is disabled, the Commissioner will consider whether to use the older age category after evaluating the overall impact of all the factors of the claimant's case. 20 C.F.R. § 416.963(b). Substantial evidence must support the Commissioner's age-category decision. *Phillips*, 671 F.3d at 707.

As noted above, the Commissioner must look to a claimant's age for all periods relevant to the disability determination. This period includes the date on which the ALJ renders the final decision. *Cf. Phillips*, 671 F.3d at 703 (look to claimant's age at the time of the ALJ's decision); *Borderline Age*, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-2-42, 2016 WL 1167001, at *1 (last update Mar. 25, 2016) (apply whenever age category changes within a few months after the date of

adjudication).  Because Woods was within a few months of attaining age 50 when the ALJ rendered her decision in September 2017, and she would have been found disabled under the Guidelines if she were classified in the higher age category, the ALJ was required to determine whether it would be more appropriate to classify Woods in the higher category or to use her chronological age.  HALLEX I-2-2-42, 2016 WL 1167001, at *1.  "The closer in time the claimant is to the next higher age category, the more disadvantageous the claimant's age."  *Id.* at *2.

In borderline age situations, the claimant must show that the higher age category is appropriate.  HALLEX I-2-2-42, 2016 WL 1167001, at *2.  To achieve this, "the claimant must show that [other relevant] factor(s) have a progressively more adverse impact on . . . her ability to adjust to other work as the period between [her] actual age and attainment of the next higher age category lengthens."  *Id.*; *see also Phillips*, 671 F.3d at 702.  Relevant factors that may impact the case include having no work history or past relevant work from many years ago, and RFC limitations that adversely affect the claimant's occupational base but do not substantially erode it.  *Borderline Age*, Program Operations Manual System (POMS) DI 25015.006E (cited in HALLEX I-2-2-42, 2016 WL 1167001, at *2), *available at* https://secure.ssa.gov>poms.nsf>Inx.  Where a claimant establishes at least one additional vocational adversity, the ALJ must consider applying the next age category and explain such consideration in her written decision, noting the

specific factors considered. *Phillips*, 671 F.3d at 704, 707; HALLEX I-2-2-42, 2016 WL 1167001, at *3.

As demonstrated by the ALJ's RFC determination and as testified to by the vocational expert, additional vocational adversities are present in this case, including Woods' lack of relevant work experience and additional and significant non-exertional limitations that adversely affect her occupational base. The ALJ was therefore required to consider whether Woods should be classified as a person closely approaching advanced age. The ALJ's decision here, however, is silent as to whether such consideration was made. Indeed, the face of the decision shows the ALJ's error given that her Step 5 analysis looked to Woods' age only for the date on which Woods filed her application and not for the date of the decision. 20 C.F.R. § 416.923(b); HALLEX I-2-2-42, 2016 WL 1167001, at *1. The ALJ's silence leaves me unable to determine if the Commissioner considered whether Woods should be moved to the higher age category. Accordingly, substantial evidence does not support the Commissioner's decision. *Phillips*, 671 F.3d at 707 (and cases cited therein).

While the Commissioner concedes that this case is a borderline age situation under the Regulations and that the ALJ failed to undergo the required analysis, he argues that remand is not appropriate because the Appeals Council considered Woods' argument when it denied review: "We considered the borderline age

situation in this case, and we found that the factors in the record do not support application of the higher age category." (Tr. 2.) The Commissioner argues that this statement that the Appeals Council considered the borderline situation satisfies the Commissioner's obligation under the Regulations. This argument is misplaced. If the Appeals Council *grants* review, its decision (absent a remand to the ALJ) becomes the Commissioner's final agency action that is subject to judicial review. Here, on the other hand, the Appeals Council considered Woods' argument and then *denied* review. My statutory jurisdiction is confined to review of the "final decision of the Commissioner." 42 U.S.C. § 405(g). Because the ALJ's decision is the "final decision of the Commissioner," I may only review that decision, not the Appeals Council's non-final administrative decision to deny review. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992); 20 C.F.R. § 416.1481.

In the circumstances of this case, the ALJ's wholesale failure to address Woods' borderline age situation and consider whether Woods should be placed in the higher age category of a person closely approaching advanced age requires remand. Because substantial evidence does not support the ALJ's decision to classify Woods as a younger individual at the time of the decision, and classification to a higher age category would result in a finding of disabled, I will remand the matter to the Commissioner for further proceedings.

D. <u>Subjective Statements of Symptoms</u>[3]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-

---

[3] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 416.929. This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Here, after finding at Step 3 of the sequential analysis that Woods' impairments did not meet the criteria for listing-level disability, the ALJ evaluated Woods' statements of symptoms and assessed her RFC. The ALJ addressed the *Polaski* factors and made findings that Woods' claimed symptoms were inconsistent with the record. For the following reasons, these findings are not supported by substantial evidence on the record as a whole.

First, the ALJ acknowledged that objective medical evidence supported the existence of back and neck pain given that diagnostic imaging of the spine, *i.e.,* x-rays and MRIs, showed degenerative anterolisthesis, degenerative joint disease, facet joint osteoarthritis, diffuse disc protrusion with compression, facet hypertrophy, and bilateral neural foraminal stenosis with encroachment on nerve roots. (Tr. 17.) The ALJ determined, however, that Woods' statements regarding the effects of these impairments were not supported by objective clinical signs. Specifically, the ALJ found that the treatment records did not indicate that Woods suffered from significant musculoskeletal or neurological deficits, "such as decreased sensation, substantial weakness, muscle atrophy, reduced ranges of motion, or other supportive abnormalities." (*Id.*) An ALJ's own belief as to what the medical evidence should show does not constitute substantial evidence to

discount a claimant's statement of symptoms. *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989).

Regardless, the medical record refutes the ALJ's findings. Contrary to the ALJ's statement, Woods' treating physicians documented reduced range of motion and other abnormalities. For instance, Woods' treating orthopedist documented limited range of motion in April 2015 and noted that Woods could not stand up straight, could not lie flat, and had severe pelvic tilt with exaggerated lumbar lordosis. (Tr. 567-68.) In June 2016, another physician noted Woods' "obvious back deformity" and her difficulty with walking. (Tr. 408-09.) In January 2017, Woods' treating pain management specialist documented limited range of motion as well as positive straight leg raising. (Tr. 619-20.) A consulting physician documented similar findings in December 2014 – limited range of motion about the neck, shoulders, hips, cervical spine, and lumbar spine; and he observed that Woods could not stand up straight, had "prominent" lumbar lordosis, could not lie supine, could not squat, and took small steps and limped while walking. Seated straight leg raising was also positive during this exam. (Tr. 308-11, 317-18.) And Dr. Hari Nallapaneni, Woods' treating general physician, reported that MRI testing confirmed that Woods had significant disc disorder and neuroforaminal stenosis that "explains her symptoms." (Tr. 416.) The ALJ's conclusion that objective medical evidence did not support Woods' statements regarding the effects of her

impairments is not supported by substantial evidence on the record as a whole.

The ALJ also summarized Woods' treatment but determined that the lack of "escalating treatment modalities," such as hospitalizations, recurrent emergency room visits, and surgery, suggested that Woods' symptoms were not as severe as alleged or that conservative treatment effectively controlled her symptoms. (Tr. 19.)[4] Nothing in the record, however, shows that Woods was not pursuing a valid course of treatment, and no treating provider questioned the severity of her impairment. *See Tate v. Apfel*, 167 F.3d 1191, 1197-98 (8th Cir. 1999).[5] The ALJ's suggestion otherwise amounts to the ALJ "playing doctor" and improperly substituting her beliefs for that of medical professionals. *See Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). As stated above, an ALJ's own belief as to what the medical evidence should show does not constitute substantial evidence to support an adverse credibility determination.

---

[4] Notably, in her recitation of treatment provided to Woods, the ALJ does not mention the treating physician's repeated referrals to and Woods' eventual treatment by a pain management specialist, the referral to an orthopedic surgeon, or the nature and effectiveness of prescribed medications for pain caused by her musculoskeletal impairments. These medications included Flexeril (muscle relaxant), Lidoderm patch (for nerve pain), tramadol (for moderate to severe pain), meloxicam (for severe pain), Celebrex (for pain caused by osteoarthritis), and gabapentin (for nerve pain).

[5] Indeed, in addition to reporting that diagnostic imaging explained Woods' symptoms, Dr. Nallapaneni also noted on several occasions that conservative treatment was pursued to avoid the risk of Woods being addicted to narcotics. (*E.g.*, Tr. 416.)

*Fowler*, 866 F.2d at 252.

Next, throughout her decision, the ALJ repeatedly referred to a non-treating examiner's statements that Woods significantly magnified her symptoms and engaged in exaggerated behavior during a consultative examination conducted in July 2017. Crediting this opinion of symptom magnification, the ALJ suggested that Woods' treating physicians may have based their treatment decisions only on Woods' subjective complaints and "questionable" clinical presentation.[6] (Tr. 19.) Nothing in the record supports this implication. A review of the record *in toto* shows that for more than three years, Woods' complaints, symptoms, and presentation to several physicians, including treating and consulting physicians alike, were consistent. These physicians likewise made consistent findings regarding Woods' presentation, including the severe nature of her back deformity and resulting inability to stand upright.[7] The records of Woods' treating physicians provide objective evidence through both diagnostic imaging and clinical examination that support Woods' complaints, and there is no indication that any treating source considered Woods to be exaggerating or magnifying her symptoms. In fact, as noted above, Woods was referred to specialists, including a pain

---

[6] I question how "severe pelvic tilt," "obvious back deformity," and "prominent" lumbar lordosis can be considered "questionable" clinical presentations.

[7] Notably, the July 2017 consulting examiner did not have any of these physicians' treatment notes. (*See* Tr. 656.)

management specialist, and her treating sources made consistent and objective observations regarding the severity of her impairments. To disregard without explanation the consistent and objective evidence from Woods' treating sources and rely on the opinion of a one-time examiner to discount Woods' statement of symptoms was improper. *See Kuhl v. Astrue*, No. 4:12-CV-00091-NKL, 2012 WL 4215871, at *7 (W.D. Mo. Sept. 19, 2012). *See also Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (holding that the opinion of a consulting physician who examined the claimant once or not at all does not generally constitute substantial evidence). If the ALJ has questions concerning the impact Woods' impairments have on her ability to engage in work-related functions, she may contact Woods' treating physicians.

Finally, the ALJ discounted Woods' statements regarding her limited daily activities, citing only the consulting examiner's opinion of symptom exaggeration. Because the ALJ erred in relying on this opinion, her determination to discount Woods' statements of limited activity on this basis was error.

Accordingly, the ALJ's adverse credibility determination is not supported by substantial evidence on the record as a whole. Because the ALJ failed to properly consider all of the evidence under the standards set out in *Polaski*, I will remand this matter to the Commissioner for an appropriate analysis of Woods' credibility in the manner required by and for the reasons discussed in *Polaski*.

## Conclusion

Substantial evidence does not support the Commissioner's classification of Woods as a younger individual in her consideration of whether Woods meets the disability criteria of the Medical-Vocational Guidelines. I will therefore reverse the Commissioner's decision and remand the case for proper consideration of Woods's borderline age situation. If necessary, the Commissioner shall also re-evaluate Woods' statements of symptoms and limitations, which may be clarified by her treating providers, if contacted, to assist the Commissioner in ascertaining what level of work, if any, Woods is able to perform. *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2019.